UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SYNCA DIRECT, INC.,

    Plaintiff and
    Counterclaim-Defendant,

    vs.

MULTIMEDIA DENTAL SYSTEMS, INC.,

    Defendant and
    Counterclaim-Plaintiff,

    vs.

SYNCA, and JOHN DOES 1-5,

    Additional
    Counterclaim-Defendants.

Index No. 06-CV-1263
LEK/DRH

-----------------------------------------------------------------x

**MEMORANDUM OF MULTIMEDIA DENTAL SYSTEM IN
SUPPORT OF ITS MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

James V. Marks
Bar No.: 513143
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007-3189
(212) 531-3200

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

FACTUAL BACKGROUND .................................................................................................... 1

I.    MMD Owns A Registered Copyright In Its Proprietary Software. ...................................... 1

II.    The Defendants Have Been Marketing Infringing Software, Despite Their False Representations To MMD, And Have Refused To Provide Source Code for CADI Even After Filing Suit Seeking A Declaration Of Non-infringement. ................................. 3

III.    Large Portions Of The CADI Source Code Were Copied Wholesale From MediaDent D.I. ................................................................................................................ 4

    A.    More Than 150 Source Files In CADI Have Names Identical To Corresponding Source Files In MediaDent D.I. .................................................... 4

    B.    The Content Of Many Source Files In CADI Is Identical Or Nearly Identical To Corresponding Source Files In MediaDent D.I. ................................. 5

ARGUMENT ............................................................................................................................. 7

I.    MMD Is Entitled To An Injunction To Prevent The Defendants' Ongoing Infringement Of MMD's Registered Copyright In Its Software. .......................................... 7

    A.    MMD Has A Substantial Likelihood of Success On The Merits ............................ 8

        1.    *MMD Owns A Valid Copyright in MediaDent D.I.* ................................... 8

        2.    *The Defendants Have Copied The MediaDent D.I. Source Code Without Authorization.* ....................................................... 8

    B.    Because MMD Has Shown That The Defendants Are Infringing Its Copyright, There Is A Presumption That It Will Suffer Irreparable Harm. ............. 9

    C.    The Balance Of Equities Clearly Favors MMD; The Defendants Cannot Complain Of Harm From Being Enjoined Against Infringement. ......................... 9

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

## CASES

Boisson v. Banian, Ltd.,
 273 F.3d 262 (2d Cir. 2001)..................................................................................8

Bose Corp. v. Silonsonnic Corp.,
 413 F. Supp. 2d 339 (S.D.N.Y. 2006)...............................................................7, 10

Central Point Software, Inc. v. Global Software and Assessment,
 859 F. Supp. 640 (E.D.N.Y. 1994)........................................................................8

Clonus Associates v. DreamWorks, LLC,
 417 F. Supp. 2d 248 (S.D.N.Y. 2005)................................................................7, 9

Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.,
 843 F.2d 600 (1st Cir.1988)................................................................................10

Fonar Corp. v. Domenick,
 105 F.3d 99 (2d Cir. 1997)....................................................................................8

Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.,
 965 F.2d 1224 (2d Cir. 1992)................................................................................7

Marisa Christina, Inc. v. Bernard Chaus, Inc.,
 808 F. Supp. 356 (S.D.N.Y. 1992) .......................................................................8

Motorola Credit Corp. v. Uzan,
 322 F.3d 130 (2d Cir.2003)...................................................................................7

Streetwise Maps, Inc. v. VanDam, Inc.,
 159 F.3d 739 (2d Cir. 1998)..................................................................................8

Time Warner Cable v. Bloomberg L.P.,
 118 F.3d 917 (2d Cir.1997)...................................................................................7

Virgin Enters. v. Nawab,
 335 F.3d 141 (2d Cir. 2003)..................................................................................7

Ward v. New York,
 291 F. Supp. 2d 188 (W.D.N.Y. 2003) .................................................................7

## FEDERAL STATUTES

Fed. R. Civ. P. 26(a) ........................................................................................................4

Counterclaim-plaintiff Multimedia Dental Systems, Inc. ("MMD") submits this memorandum in support of its motion for an order temporarily restraining and preliminarily enjoining counterclaim-defendants Synca Direct, Inc. ("Synca Direct"), Synca ("Synca Canada") (collectively "Synca"), and their agents from continuing to infringe the copyright in MMD's MediaDent® Digital Imaging v.4.5 software ("MediaDent D.I.").

MMD owns the copyright in MediaDent D.I., the world's most widely used digital X-ray and dental imaging software solution. Synca Direct and Synca Canada advertise, market, and distribute a dental imaging software program known as CADI v4 ("CADI"). MMD has obtained and analyzed a copy of CADI, and has confirmed that it contains significant amounts of source code that has been copied verbatim or near-verbatim from MediaDent D.I., in violation of MMD's exclusive rights under its registered copyright. Because Synca Direct and Synca Canada have ignored MMD's demands to cease and desist, MMD now brings this motion to enjoin their continuing infringement.

## FACTUAL BACKGROUND

### I. MMD Owns A Registered Copyright In Its Proprietary Software.

There is no serious dispute about the material facts of this case. MMD owns the exclusive rights to MediaDent D.I., a powerful software program tool that allows dental clinicians to capture and store images from radiographs, video photography, and other sources, and to integrate them with patient exam results all in one place. Declaration of James E. Oswell, Jr. ("Oswell Decl."), ¶ 4. Designed as an open architecture solution, MediaDent D.I. works with virtually any sensor, PSP, digital pan, scanner or camera, and integrates with a wide range of practice management software systems. Id.

In December 2000, MMD acquired the rights to an earlier version of MediaDent D.I. by means of a Software Sale, Purchase, and Exclusive Licensing Agreement with Gerrit Martens, the then-owner of an earlier version of MediaDent D.I. ("the Martens Agreement"). Robert Scott McLaughlin Decl. at ¶ 2. The Martens Agreement gave MMD an exclusive license to market the MediaDent software, upgrades thereto, future versions thereof, and products utilizing any of its source code throughout the Americas. Id.

The Martens Agreement created a Source Code escrow, a common practice in the software industry. Designed to protect MMD in the event that Martens went out of business, the escrow agreement required the escrow agent to release all source code to MMD in the event of default. If the source code were so released, it would "immediately become the sole property of MMD. . . and all right, title and interest [would] vest in MMD." Id. at ¶ 3.

Martens did default; the escrow agent duly released the escrowed materials to MMD in August, 2004. MMD therefore became the sole and exclusive owner of the MediaDent software, upgrades thereto, later versions thereof, and products using any portion of the Source Code. Id. at ¶ 4. MMD then registered the copyright in MediaDent D.I. On March 4, 2005, the United States Copyright Office issued Certificate of Registration No. TX-6-159-013 to MMD. Oswell Decl., ¶ 3; Robert Scott McLaughlin Decl. at ¶ 4.

The dental imaging software business is intensely competitive; MMD has succeeded because MediaDent D.I. offers advanced features and a user-friendly interface. MMD acquired the MediaDent D.I. software at a price of $1.25 million, but that was just the initial investment; MMD is continually devoting resources to the ongoing development and improvement of the product. Robert Scott McLaughlin Decl. at ¶¶ 4, 8. In simple terms, the MediaDent D.I. software is MMD's most valuable asset and is critical to its business.

**II.   The Defendants Have Been Marketing Infringing Software, Despite Their False Representations To MMD, And Have Refused To Provide Source Code for CADI Even After <u>Filing Suit Seeking A Declaration Of Non-infringement.</u>**

In April 2002, MMD entered a Distribution Agreement with Synca that allowed Synca to distribute certain MediaDent products in Canada, subject to specified terms and conditions. Because Synca's performance was inadequate, MMD did not renew the agreement, and it was terminated. Upon termination, Synca was no longer authorized to distribute MediaDent D.I. or any other MediaDent products. Id. at ¶ 5.

In 2005, MMD became aware that Synca was offering the CADI software. CADI appeared to be very similar to MediaDent D.I., which Synca was no longer authorized to distribute, and MMD was very concerned that CADI infringed its copyright. MMD wrote to Synca Direct and Synca Canada, demanding that they cease and desist from infringing MMD's copyright. Id. at ¶ 6; Declaration of Gregory J. Digel ¶ 3. In a written response, Synca did not deny that CADI infringed; it simply denied distributing the software. Id. at ¶ 4.

MMD later discovered that these representations were not true; Synca was and still is offering the CADI software in the United States and Canada, at industry trade shows and via the internet from the website www.synca.com and www.cadi.net. MMD again demanded that Synca and others cease and desist from offering the CADI software. Id. at ¶¶ 5, 6. In response, Synca Direct filed this lawsuit, seeking a declaration that it was not infringing MMD's copyright.

In an effort to resolve this dispute expeditiously, MMD requested that Synca Direct provide a copy of the source code for CADI to allow the parties to compare that code with the source code of MediaDent D.I. Id. at ¶¶ 7, 8. Although Synca Direct will assuredly be required

3

to produce this information as part of its automatic disclosures under Fed. R. Civ. P. 26(a), it refused to do so voluntarily.

### III. Large Portions Of The CADI Source Code Were Copied Wholesale From MediaDent D.I.

After Synca Direct refused to provide the CADI source code voluntarily, MMD was able to obtain an executable copy of CADI that Synca Canada was offering at an industry trade show in New York City. (See Declaration of Timothy N. McLaughlin.) MMD analyzed that software, and it quickly became apparent why Synca Direct had refused to provide the CADI source code: significant portions of the code were copied near-verbatim from MediaDent D.I. (See Oswell Declaration.)

#### A. More Than 150 Source Files In CADI Have Names Identical To Corresponding Source Files In MediaDent D.I.

As set forth in the accompanying declaration of James E. Oswell, Jr., MMD conducted certain comparisons and tests to determine if CADI contained source code identical to the source code in MediaDent D.I. Oswell Decl., ¶ 12. First, from the materials that MMD obtained from Synca Canada, Oswell was able to view the names of the files that comprise the CADI software. A simple review of the CADI software revealed that more than 150 files in CADI had names *identical* to files in MediaDent D.I. -- an impossible coincidence, given that many of the names are unique and hardly obvious. Oswell Decl. ¶¶ 13-16, 19.

For instance, the dynamically linked library (".dll") in MediaDent D.I. that is used to capture still images from a video stream on a computer running the Windows operating system is named CTPVFWSTILLCAP.DLL. The CADI software contains the same .dll with the same name. Even assuming that Synca Direct followed the convention of naming a file by its function, there are scores of possible and more typical names, including STILLCAPVIDWIN, or

4

WINSTILLCAPVID, or WINVIDSTILLCAP, or WVIDSTLCAP, or WVSTLCAPT, or any number of similar variations. Oswell Decl., ¶¶ 14-15. There are at least 38 .dll files in the CADI software that have names identical to .dll files in MediaDent D.I. Oswell Decl., ¶ 15.

Similarly, the CADI software includes initialization files, or .ini files, which contain settings and configuration data that are necessary to run applications on the Windows operating system. At least 38 of the .ini files in the CADI software have names identical to the .ini files in MediaDent D.I. Oswell Decl., ¶ 16.

The CADI software program also includes 102 desktop layout files (".dsk files"), which are files that tell the software where to display certain images or data on the graphical user interface (where a window will appear when it is activated by the user, for instance and where items within a window such as a button or a dropdown menu will appear). At least 93 of the .dsk files in CADI have names that were identical to the names of .dsk files in MediaDent D.I. Oswell Decl., ¶ 19.

B.   The Content Of Many Source Files In CADI Is Identical Or
     Nearly Identical To Corresponding Source Files In MediaDent D.I.

The copying in CADI extends to more than just the names of source files; the source code itself was copied as well. In the CADI software, the .ini files are in plain text (as opposed to the zeros and ones of object code), which allowed Oswell to run a differencing program that compared the 38 .ini files in the CADI software with the corresponding .ini files in MediaDent D.I.[1] The results of the differencing were striking: the .ini files for the CADI software were virtually identical to the .ini files in MediaDent D.I. The configuration options (e.g., the option that tells the software to look in a particular place on the user's computer for certain information)

---

[1] A differencing program is essentially equivalent to a "red-lining" program for a word processing document; the program compares the text in one file with the text in the other and shows the differences. Oswell Decl., ¶ 17.

5

are literally identical; the only changes were the parameters that were chosen (e.g., the place where the software could find the information was at c:\ProgramFiles\CADI\userinfo rather than c:\ProgramFiles\MediaDent\userinfo). Oswell Decl., ¶¶ 17-18.

Like the .ini files, the .dsk files are in plain text and thus can be run through a differencing program. Oswell therefore ran a differencing analysis on 36 of the .dsk files that had been selected at random. The results were similarly striking: all of the possible options in the .dsk files were identical to the options in the .dsk files in the MediaDent D.I. software. Once again, the only differences were in the choice of parameter for those possible options. Oswell Decl., ¶ 20.

Oswell next analyzed the dynamically linked libraries (".dlls") in the CADI software. These files contain code that perform certain functions (such as creating a still capture from a video stream), and they can be used or "called" by other parts of the program to perform those functions whenever they are needed. As noted above, 38 of the .dll files in CADI have names identical to the names of .dll files in MediaDent D.I. Because the .dlls are in object code, Oswell could not run a differencing analysis. He was able to determine, however, that all of the .dlls had exactly the same structure as the .dlls in MediaDent D.I., with one minor difference. In MediaDent D.I., the exception handling function -- the code that tells the computer what to do and what message to display when it encounters an error -- is in a single file that all of the other files in the program can use or "call" when necessary. In the CADI software, the exception handling function is moved into each .dll; each .dll therefore includes one additional function -- error handling -- at the end of the file that is not in MediaDent D.I. The .dlls in CADI are thus close derivatives of the MediaDent D.I. .dlls. Oswell Decl. ¶ 21.

Based upon these analyses and comparisons, substantial portions of the CADI source code are identical to or derived from the MediaDent D.I. source code. Oswell Decl. ¶ 22. The CADI software clearly infringes MMD's copyright in the MediaDent D.I. software.

## ARGUMENT

To protect its critically important software, MMD requests that this Court temporarily restrain and preliminarily enjoin Synca's continuing infringement of MMD's copyright in the MediaDent D.I. software.

I. **MMD Is Entitled To An Injunction To Prevent The Defendants' Ongoing Infringement Of MMD's Registered Copyright In Its Software.**

The standards for obtaining a temporary restraining order are the same as those that govern a preliminary injunction. Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992).

> Generally, a party seeking injunctive relief "must show (1) 'a threat of irreparable injury and (2) either a probability of success on the merits or sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'"

Ward v. New York, 291 F. Supp. 2d 188, 196 (W.D.N.Y. 2003) (quoting Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir.2003) (quoting Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir.1997))); Clonus Associates v. DreamWorks, LLC, 417 F. Supp. 2d 248, 250 (S.D.N.Y. 2005) (citing Virgin Enters. v. Nawab, 335 F.3d 141, 145 (2d Cir. 2003)).

When an injunction is a mandatory one that will alter the status quo, the moving party must show a substantial likelihood of success. Bose Corp. v. Silonsonnic Corp., 413 F. Supp. 2d 339, 341 (S.D.N.Y. 2006). Consequently, in the copyright context, the required showing

collapses into a showing of a likelihood of success on the merits. Central Point Software, Inc. v. Global Software and Assessment, 859 F. Supp. 640, 644 (E.D.N.Y. 1994) (quoting 3 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT, ¶ 14.06[A] at 14-84 through 14-85). MMD can readily demonstrate a strong likelihood of success on the merits.

    A.    MMD Has A Substantial Likelihood of Success On The Merits.

To show copyright infringement, MMD must show that (1) it owns a valid copyright, and (2) the defendants have copied the original copyrighted material without permission. Fonar Corp. v. Domenick, 105 F.3d 99, 103 (2d Cir. 1997). Neither of these elements can be seriously disputed.

    1.    *MMD Owns A Valid Copyright in MediaDent D.I.*

MMD owns a certificate of copyright registration. Oswell Decl., ¶ 3. This certificate is *prima facie* evidence of a valid copyright. Id. at 104.

    2.    *The Defendants Have Copied The MediaDent D.I. Source Code Without Authorization.*

The second prong of the test for infringement requires MMD to show unauthorized copying of its copyrighted work. Because direct evidence of copying is rarely available, a plaintiff can prove copying by showing that the accused work is substantially similar to the copyrighted work, and that the defendant had access to the copyrighted work. Boisson v. Banian, Ltd., 273 F.3d 262, 269 (2d Cir. 2001); Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 747 (2d Cir. 1998). When the similarities between the works are striking, a court can infer that the defendant had access. Marisa Christina, Inc. v. Bernard Chaus, Inc., 808 F. Supp. 356, 358-59 (S.D.N.Y. 1992) (citing cases).

8

Here, MMD has analyzed the CADI software and presented compelling evidence that substantial portions of CADI were copied, literally and wholesale, from the MediaDent D.I. source code. Oswell Decl. ¶¶ 10-22. This evidence of extensive literal copying is more than sufficient to support an inference of access; it virtually requires it. MMD has thus established a *prima facie* case of copyright infringement.

### B. Because MMD Has Shown That The Defendants Are Infringing Its Copyright, There Is A Presumption That It Will Suffer Irreparable Harm.

MMD's showing of success on the merits of its infringement claim also establishes the other requirements for an injunction. "In the Second Circuit, a prima facie case of copyright infringement generally gives rise to a presumption of irreparable harm . . . . Thus the requirement of proof of irreparable harm can in such a case effectively be met by proof of a likelihood of success on the merits." Clonus Assocs., 417 F. Supp. 2d at 250-251 (quoting Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002)).

### C. The Balance Of Equities Clearly Favors MMD; The Defendants Cannot Complain Of Harm From Being Enjoined Against Infringement.

Finally, the balance of harms weighs decidedly in MMD's favor. MMD owns a unique and valuable copyright in MediaDent D.I., software that is critical to its business. Synca has copied or obtained unauthorized copies of MMD's MediaDent D.I. and is trying to market this software without permission; put bluntly, the defendants have effectively stolen MMD's software. The harm from this activity is so grave that it is presumed, and presumed irreparable, as a matter of law.

The defendants, by contrast, will suffer no harm from an injunction. As an initial matter, it appears that they have taken down the websites through which they have been offering the

CADI software. See http://www.synca.com/english/imaging.html (page previously offering CADI imaging software is now "under construction"). If the defendants have voluntarily ceased offering the infringing software, the harm that they will suffer must not be significant.[2] The defendants' websites indicate that they offer other software products, moreover, such that an injunction against CADI would not cripple their businesses.

In any event, the Court should give "little equitable consideration" to any complaint about the economic harm that the defendants might suffer if they are enjoined from offering or distributing CADI because they have no right to infringe the copyright in MediaDent D.I. See Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611 (1st Cir.1988). To hold otherwise would give infringers free rein to build their businesses based upon others' intellectual property. See id. Indeed, the balance of harms does not favor an infringer even if its business would be "virtually destroyed by a preliminary injunction." Id. As the First Circuit observed,

> [i]t would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted. We see little reason why an entity should be allowed to establish and continue an enterprise based solely on what is in all likelihood copyright infringement, simply because that it is its only business."

Id.

In sum, MMD has shown that Synca Direct and Synca Canada are infringing the copyright in the MediaDent D.I. software, that the defendants' continuing infringement will

---

[2] Because the defendants have in the past offered the infringing CADI software on their websites and may again in the future, and because they may still be offering the infringing software through other channels, their removal of the offending pages does not moot MMD's request for an injunction. See Bose Corp. v. Silonsonnic Corp., 413 F. Supp. 2d 339, 346 (S.D.N.Y. 2006) (entering injunction despite defendants' voluntary cessation of infringement because they "possibly could again [infringe] in the future").

cause MMD irreparable harm, and that the balance of equities strongly favors the entry of an injunction against the defendants' further infringement MMD's software.

## CONCLUSION

There is no serious dispute about the central facts of this case. MMD owns a registered copyright in its MediaDent D.I. software, and Synca Direct and Synca Canada are offering and distributing software whose source code is largely and literally copied from MediaDent D.I. Synca Direct and Synca Canada are committing copyright infringement as a matter of law, causing MMD irreparable harm. MMD is entitled to an immediate order temporarily restraining and preliminarily enjoining Synca against further infringement, in the form of the accompanying Proposed Order.

Dated: New York, New York
       January 11, 2007

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
    James V. Marks
    Bar No.: 513143
    195 Broadway
    New York, New York  10092
    (212) 513-3200

Counsel for Multimedia Dental Systems, Inc.
Defendant and Counterclaim Plaintiff

# 4291306_v1