To: RelayFax via port COM2       From: 770-998-7434       2005/01/12 15:46:37 (Page 2 of 17)
Sent By: MultiMedia Dental Systems;   770-998-7434;   Jan-12-05 5:21PM;   Page 2
24/12/00   18:15   M.A. & C EUROPE                                        P.01

# SOFTWARE SALE, PURCHASE AND
# EXCLUSIVE LICENSING AGREEMENT

This is a software sale, purchase and licensing agreement entered into between MULTIMEDIA DENTAL SYSTEMS, INC. (known in this Agreement as "MMD") and MR. GERRIT MARTENS (known in this Agreement as the "Seller"). In this regard, it is understood and agreed that it is the intent of the parties that the Seller is individually and personally responsible regarding all terms and conditions contained in this Agreement and is individually and/or personally liable in the event of any breach of this agreement.

(1) Incorporation and Merger of Letter of Intent: The parties acknowledge that on or about November 21, 2000, they freely and voluntarily entered into an exclusive Letter of Intent for the purchase from the Seller of a perpetual, exclusive, royalty free and unconditional and irrevocable license of any and all versions of any kind, past, present and/or future ( under the conditions of ( 6 ) ), of the Mediadent Software (referred in this agreement as "Mediadent") and all related technology including, but not limited to, any upgrades of the Mediadent software from any source as well as any of its past, present and/or future (under the conditions of (6)) versions. In this regard, the parties expressly agree that, any software which uses Mediadent as a front end and/or uses Mediadent as a source code in any way is subject to this agreement and that MMD will have the exclusive right to the use and sale of any dental application which falls in this category unless MMD expressly waives this right in writing. It is understood that all add on applications are subject to additional royalties and support charges, to be negotiated at the time of introduction. It is further understood and agreed that this license and sale shall be restricted to North, Central and South America only. The parties also agree that MMD

1

shall have the right of first refusal to market any other non-dental products which may be produced by the Seller in North, Central and South America. If this occurs, a separate written agreement will be executed between the parties regarding the additional product[s].

(2) **Scope of Agreement**: It is understood and agreed between the parties that any software of any kind which is developed by the Seller, any of the Sellers subsidiary companies, any company in which the Seller has any interest or which in any way may be construed as an upgrade to the Mediadent Software, shall be included in the terms and conditions of this sale and that the purchase price being paid by MMD. This includes, but is not limited to, Mediadent HDX Sensor as well as any and all software upgrades and/or progeny, either past, present and/or future, which can be construed to relate to the Mediadent Software in any capacity. New products or modules, which address non specific dental procedures, such as orthodontics, orthognatic surgery, maxilo-facial surgery, dento-facial orthopedics, VTO, STO and other specific medical applications, even when using Mediadent as a front end, are included in this agreement and will be subject to a separate written agreement between the parties, regarding these additional products.

(3) **Source Code and Deposit in Escrow**: It is understood and agreed that the Seller shall deposit with an escrow agent, chosen exclusively by MMD and subject to due diligence by the Seller, at MMD's sole cost, the source code for any and all software of any kind applicable to the terms and conditions of this agreement, including, but not limited to, any subsequent upgrades or changes, any and all documentation, as well as any and all instructions necessary to compile the source code relating to any past, present and/or future revisions ( under the conditions of ( 6 )) to the software source code

2

To: RelayFax via port COM2   From: 770-998-7434   2005/01/12 15:46:37 (Page 4 of 17)
Sent By: MultiMedia Dental Systems;   770-998-7434;   Jan-12-05 5:21PM;   Page 4
24/12/00   18:17   M.A.& C EUROPE   P.01

immediately upon the execution of this agreement or upon demand by MMD. It is further understood and agreed that as part of any software escrow agreement, that MMD will include a clause which guarantees that the source code will not be released to MMD until the purchase price has been paid in full and that the escrow agreement, once approved by both parties, shall be made a part of this contract as a separate addendum as soon as practicable after the execution of this contract. It is further understood and agreed that the escrow agent shall issue a key to MMD to enable to MMD to install the system at issue in this agreement at its customer locations upon reasonable demand. In this regard, MMD agrees to pay the escrow agent the reasonable cost of producing each such key and will include a provision in the escrow agreement providing that the escrow agent will pay the Seller by the 25th of each month. The Seller understands and agrees that while MMD will incorporate this clause into the software escrow agreement, that MMD has no direct control of the timeliness of the payments from the escrow but will make every effort to make sure payments are made on a timely basis.

**(4) Change or Transfer of Escrow Agent**: The parties understand and agree MMD may, in its sole discretion, change and/or transfer escrow agents at any time without the prior approval and/or consent of the Seller. In this event, MMD will promptly notify the Seller, in writing, of the change of escrow agents by regular mail and e-mail, directed to the Seller at the Sellers last known business and/or e-mail address and will keep the Seller fully advised of all relevant information concerning the new escrow agent. It is further understood and agreed that the Seller shall have fifteen (15) days for due diligence concerning the new escrow. In the event, that this due diligence, makes it impossible for

3

the Seller to accept the change, MMD will have to present another escrow agent, whose acceptance will again be subject to a new due diligence.

**(5) Purchase Price:** The total purchase price agreed to between MMD and the Seller is *One Million, Two Hundred Fifty Thousand Dollars (1,250,000.00),* or *One Million, Four Hundred Seventy-Four Thousand, Nine Hundred Sixty-Six Euros (1,474,966.00),* payable at the sole option of MMD based on the value of currency and exchange rate at the time of the execution of this agreement. In this regard, MMD agrees to pay the Seller the total of *Ten Thousand, Five Hundred Dollars (10,500.00)* per month, or the equivalent in Euros, for sixty (60) consecutive months, plus *One Hundred Eighty-Five Dollars (185.00),* or the equivalent in Euros, per Mediadent system sold by MMD until the entire amount is paid in full or until the expiration of sixty (60) months from the date of the contract. In this regard, it is understood and agreed that in the event the entire balance has not been paid to the Seller by the expiration of the sixtieth month, then any remaining balance will become immediately due and payable to the Seller to balance the purchasing price in Euro ( 1,474,966 Euro ). The payments contemplated by this agreement shall commence on the closing of this agreement and shall continue until paid in full. It is also understood and agreed that MMD may, at its sole option, accelerate the payments in this agreement without penalty and make close out the purchase price of the contract at any time without prior notification to the Seller and that in the event of a default of any payment by MMD, that MMD shall have forty five (45) days from the date of the default to cure the default without penalty to MMD. Finally, it is understood and agreed that MMD shall make payments to the Seller either directly to the Seller or by

4

To: RelayFax via port COM2        From: 770-998-7434        2005/01/12 15:46:37 (Page 6 of 17)
Sent By: MultiMedia Dental Systems;    770-998-7434;    Jan-12-05  5:22PM;    Page 6
24/12/00  18:18    M.A. & C EUROPE                                              P.03

deposit to any bank and/or account that the Seller chooses, at the Seller's discretion, provided these deposits are not prohibited or encumbered by law.

(6) **Intention of Seller**: It is understood and agreed that MMD will retain the Seller, following the closing of this agreement, to assist with any further research and development, application and/or production that MMD deems necessary. In exchange for this retention, MMD agrees to pay the Seller and/or his heirs, executors, assigns or any designated company or individual appointed by the Seller, the sum of *Six Thousand, Five Hundred Dollars (6,500.00)*, or the equivalent in Euros, per month for these services. This amount shall be paid by MMD by the 1st of each month for the expenses incurred that month until the purchase price has been paid in full. Once the purchase price has been paid in full or in the event that MMD chooses to cancel this retention, then this obligation shall cease. In this regard, it is understood that all new features, functions and/or modules, added to the software following further development, will automatically become part of the software and will under no circumstances be subject to additional royalties or claims by MMD or the Seller provided all payments have been made pursuant to this provision by MMD. This means that MMD will only receive upgrades, for as long as the $ 6,500 have been paid. Further upgrades, will not become automatically part of the Mediadent software. It is further understood that the service agreement can be extended at the wish of MMD., after the purchase price has been paid in full

In this regard, it is also understood and agreed that MMD shall have no right to sell the source code or any part of it to any third party outside North, Central or South America.

(7) **Scope of Research and Development**: The scope of the research and development contemplated in previous paragraph shall include, without limitation, hardware integration

5

and servicing, production of software versions, master CD Roms, servicing software sold to or sold by dealers, electronic, but not hard copy, production of any and all manuals relating to the software in any regard, translation of the software manuals into English, Spanish, French, Brazilian, and/or Portuguese, and/or the technical information reasonably needed and requested by MMD and any and all technical training and assistance to MMD as requested in their discretion. In the event MMD, in its sole discretion, believes that the Seller or the designate can no longer perform to MMD's satisfaction, then it may discontinue the payment of the monthly fee of $6,500.00 at any time upon thirty (30) days written and e-mail notice to the Seller at the Sellers last known business and email addresses. If such notice is sent, it shall be effective upon mailing by MMD, regardless of receipt by the Seller.

(8.) Provision of Agreement: It is understood and agreed between the parties that a copy of this Agreement shall be lodged with the software escrow agent. At the time of closing, the Seller agrees to deliver the source code and any and all information and/or equipment used by MA & C for producing software keys and/or any other such technology otherwise necessary for producing software keys to the escrow agent. In this regard, it is understood that the terms and conditions of this agreement shall remain confidential and shall only be released upon the written consent of both parties. It is further understood and agreed that and agreed that the parties shall cooperate fully with each other and/or the escrow agent and may release any document and/or documents which are necessary to effectuate the escrow to any third party. The parties further agree that they will cooperate fully with each other in every respect regarding all other aspects of this agreement.

6

To: RelayFax via port COM2    From: 770-998-7434    2005/01/12 15:46:37 (Page 8 of 17)
Sent By: MultiMedia Dental Systems;    770-998-7434;    Jan-12-05 5:23PM;    Page 8
24/12/08    18:20    M.A. & C EUROPE    P. 05

(9) **Default by Seller:** Default by the Seller shall deem to have occurred under the escrow agreement upon the occurrence of any of the following financial conditions:

(a) If the Seller has personally availed or has been subjected to, himself or by any third party, a legal and/or administrative proceeding of any kind, including, but not limited to, bankruptcy and/or its foreign equivalent in which the Seller is named as a debtor, either voluntarily or involuntarily; or,

(b) If the Seller has executed any assignment for the benefit of any creditor[s] without prior written consent of MMD; or

(c) If a receiver, or its equivalent, has been appointed for the Seller, either voluntarily or involuntarily, or if any proceeding of any kind involving insolvency and/or the protection of or from creditors if filed and/or brought against the Seller.

In this regard, it is understood and agreed between the parties that the Seller may cure this default provided (1) that the action and/or proceeding is or has been terminated, (2) that the action and/or proceeding has not been discharged and/or terminated without any prejudice to MMD's rights and interest within ninety (90) days of being filed and (3) that MMD, in its sole discretion determines that its rights have not been prejudiced or harmed in any way. In addition, the Seller shall also be determined to be in operational default of this agreement if:

(a) The Seller has ceased his ongoing business operations and/or is unable to adequately continue business operations to a degree contemplated by the parties to give full meaning and substance to all the terms and conditions of this agreement at the time of the execution of the agreement; or,

7

(b) If any other event and/or circumstance occurs, which demonstrates to MMD with reasonable certainty, the inability or unwillingness of the Seller to fulfill his obligations to MMD under this Agreement, including but not limited to material fraud and/or misrepresentation of any kind.

In the event any of these conditions shall occur, MMD shall give written notice by certified mail to the escrow agent and regular and e-mail mail notice to the Seller of an occurrence of default. The Seller shall have ninety ( 90 ) days from the date of the letter in which to provide MMD with satisfactory information and proof that the default has been cured or that no such default has taken place. In the event the Seller fails to provide this information within this timeframe, then the escrow agent shall immediately deliver to MMD all escrow materials, revisions, additions, source code keys and all other information contained in escrow and it shall immediately become the sole property of MMD, without recourse to the Seller and all right, title and interest shall vest in MMD.

In this regard, it is understood and agreed that any of the default provisions referenced above relate to the Seller personally.

(10) **Default by MMD**: Default by MMD shall deem to have occurred under the escrow agreement upon the occurrence of any of the following conditions:

(a) If MMD has availed or has been subjected to, itself or by any third party, a legal and/or administrative proceeding of any kind, including, but not limited to, bankruptcy or chapter 11, either voluntarily or involuntarily;

(b) If a receiver, or its equivalent, has been appointed for MMD, either voluntarily or involuntarily, or if any proceeding of any kind involving insolvency and/or the protection of or from creditors if filed and/or brought against MMD.

8

In this regard, it is understood and agreed between the parties that MMD may cure this default provided (1) that the action and/or proceeding is or has been terminated, (2) that the action and/or proceeding has not been discharged and/or terminated without any prejudice to the Seller's rights and interest within ninety (90) days of being filed and (3) that the Seller in its sole discretion determines that its rights have not been prejudiced or harmed in any way. In addition, MMD shall also be determined to be in operational default of this agreement if:

(a) MMD has ceased his ongoing business operations and/or is unable to adequately continue business operations to a degree contemplated by the parties to give full meaning and substance to all the terms and conditions of this agreement at the time of the execution of the agreement; or,

(b) If any other event and/or circumstance occurs, which demonstrates to the Seller with reasonable certainty, the inability or unwillingness of MMD to fulfill his obligations to the Seller under this Agreement, including but not limited to material fraud and/or misrepresentation of any kind.

In the event any of these conditions shall occur, the Seller shall give written notice by certified mail to the escrow agent and regular mail and e-mail notice to MMD of an occurrence of default. MMD shall have ninety ( 90 ) days from the date of the letter in which to provide the Seller with satisfactory information and proof that the default has been cured or that no such default has taken place. In the event MMD fails to provide this information within this timeframe, then the escrow agent shall immediately return to the Seller all escrow materials, revisions, additions, source code keys and all other information

contained in escrow and it shall immediately become the sole property of the Seller, without recourse to MMD and all right, title and interest shall vest in the Seller.

If such an event occurs, MMD shall have no further financial obligation to the Seller whatsoever and the contract shall terminate in its entirety without further balance due of any kind to the Seller. In this event, any claims, trademarks, deposits ( holding the name " Mediadent " ) made by MMD, shall be immediately waived by MMD and returned or handed over to Seller. In this case Seller will refund all costs, formerly paid by MMD to obtain, the claims, trademarks and deposits, provided these costs can be properly documented.

Furthermore, if such an event occurs, Seller shall have no further financial, commercial, marketing and service obligation to MMD whatsoever and the contract shall terminate in its entirety.. At this moment the Seller is entitled to market and service the Mediadent product in North, Central and South America at his own free will and without any limitation, without further balance due of any kind to MMD or who ever may represent MMD at that time.

(11) **Ownership and Title:** The Seller warrants, at the date of closing, that the Seller is the absolute owner of all right, title and interest in the software contemplated in this Agreement and that no third party of any kind, either corporate and/or individual, has any right or title of any kind, either past, present and/or future in the software. The Seller further warrants that he has full power and authority to enter into this Agreement and that he will not allow any entity, corporate or individual, to have an ownership interest in any software upgrades or any of the progeny relating to the software referenced in this Agreement at any time, now or in the future. In this regard, prior to the time of closing,

10

To: RelayFax via port COM2    From: 770-998-7434    2005/01/12 15:46:37 (Page 12 of 17)
Sent By: MultiMedia Dental Systems;    770-998-7434;    Jan-12-05 5:24PM;    Page 12/17
24/12/00    18:22    M.A. & C EUROPE    P.03

the Seller shall provide clear and unequivocal affidavits of non-interest executed by any individuals, corporations and/or organizations which the Seller reasonably believes may have any interest whatsoever, past, present and/or future in the MMD software. Furthermore, the Seller agrees to indemnify and hold MMD harmless against any claim and/or claims of title and/or ownership and/or interest, asserted by any individual, organization and/or entity of any kind relating to the software. In this regard, the Seller also agrees to hold harmless and completely indemnify MMD upon demand against any such claim and/or claims and agrees to undertake the primary defense of any lawsuit or legal action of any kind against MMD on a primary basis at the Sellers sole cost and expense. Furthermore, the Seller agrees to pay MMD any and all attorney's fees, cost and/or other expenses and costs associated with defending any such action, if necessary.

(12) **Acceleration of Payment and Escrow Certification**: The parties agree that at the time of closing, written instructions will be provided to the escrow agent indicating that the escrow agent may deliver, without reservation to MMD, the software contemplated in this Agreement, as well as all source codes and other materials in their possession. In this regard, if, at any time after closing, MMD provides the affidavit of an officer certifying that the contract price has been paid in full, along with reasonable proof, including a certified check or bank draft payable to the Seller in the amount of the remaining purchase price as certified by MMD, the escrow agent shall immediately deliver to MMD the source code and all information on deposit with it by the Seller. In this event, the parties agree to hold the escrow agent harmless from any claims for the release of this information.

11

To: Relay/Fax via port COM2   From: 770-998-7434   2005/01/12 15:46:37 (Page 13 of 17)
Sent By: MultiMedia Dental Systems;   770-998-7434;   Jan-12-05 5:24PM;   Page 13/17
24/12/06 18:23   M.A. & C EUROPE   P.04

**(13) Existing Contracts and Agreements:** Prior to the time of closing, the Seller has made MMD aware of a Letter of Agreement made between MA & C and Darby Dental Supply, Inc. dated June 14, 2000 (referred to in this Agreement as the "Darby Agreement"). In this regard, the Seller expressly warrants to MMD that neither he nor any company, organization and/or other entity with which he is affiliated has any further obligation to Darby and agrees to indemnify and hold MMD harmless from or against any claims made by Darby against MMD arising out of the Darby Agreement. In this regard, it is understood and agreed that MMD shall have no right[s] to any outstanding payments currently due and/or enforceable and/or recoverable from Darby to MA & C Europe, N.V. under their existing agreement. It is understood and agreed, however, that the Seller shall not issue any upgrades to the existing software as part of the Darby Agreement over and/or above version 2.26 and that these upgrades must be funneled exclusively through MMD and that MMD will be entitled to any compensation related to these upgrades. If this occurs, any expenses associated between MMD and Darby will be at MMD's sole cost and expense. Furthermore, in the event any claim is made by Darby as contemplated by this agreement, that the Seller agrees to reimburse MMD for any and all amount[s] spent by MMD to investigate, defend, settle or otherwise resolve such claim or claims. In this regard, MMD may, at its sole option, apply the amount of these expenses directly toward the satisfaction of the outstanding purchase price payable by MMD to the Seller pursuant to this Agreement without reservation. In the alternative, MMD may request payment directly from the Seller for these expenses and the Seller shall agree to pay MMD the reasonable value of these services within forty five (45) days of their being incurred by

12

MMD at MMD's option. This includes reasonable attorney's fees, costs and/or all other expenses associated with any aspect of investigation or defending such a claim or claims.

(14) <u>Non-Compete Agreements</u>: At the time of the closing, the Seller agrees that for a period of five years (5) commencing with the date of the execution of this agreement, that he shall not, alone, or as a member, employee, or agent of any partnership, or as an officer, agent, employee or director, stockholder (except stockholder of not more than five percent (5%) of the outstanding stock listed on any national and/or international securities exchange) or investor of any other corporation, directly, or indirectly, (1) own, manage, operate, join, control and/or participate in the ownership, management and/or control of, (2) become employed by, consult and/or advise, or (3) be connected in any manner with, any business and/or activity which is competitive in the Territory of North, Central and South America with the business of MMD as conducted on the date of the execution of this agreement. In the event the Seller breaches any aspect of this non-compete agreement, then MMD shall have the option of notifying the escrow agent immediately of the Sellers default which shall entitle MMD to the immediate release of any information held by the escrow agent directly to MMD. At this point, MMD shall have the unilateral right to declare that the contract is null and void and MMD shall automatically assume all right, title and interest in any materials received from the escrow agent immediately upon receipt without recourse by the Seller. In addition, MMD shall owe nothing to the Seller on any balance due concerning the remaining provisions of this agreement. Notice of this action may be sent to the Seller at the Sellers last known business and e-mail address but is not required to enforce this provision. If such notice is sent, it shall be ministerial only and shall be immediately effective upon mailing by MMD, regardless of receipt by the Seller.

13

It is also understood and agreed that MMD shall not compete with the Seller during the duration of this contract outside the geographical limitation set in this agreement, including, but not limited to, OEM export deals outside the territory of North, Central and South America.

**(15) Entire Agreement:** This Agreement, together with any agreements referenced in this document between the parties, supercedes in all respects all prior proposals, negotiations, conversations, discussions and agreements between the parties concerning the subject of this Agreement. Furthermore, the parties understand and agree that neither party shall be deemed to have drafted this document and that the provisions shall be neutrally interpreted in the event of a dispute involving the terms of the agreement.

**(16) Severability:** It is understood and agreed that if any term and/or provision of this Agreement shall be declared invalid by a court of competent jurisdiction or its equivalent, that the remaining terms and/or provisions of this Agreement shall remain in force and that any term determined to be invalid shall be replaced by any such valid term[s] and/or provision that comes closest to the intention underlying the invalid term[s] or provision.

**(17) Dispute Resolution:** The parties agree that in the event of a dispute involving any aspect of this agreement, with the exception of injunctive relief sought by either party, that the matter shall be submitted to arbitration before an arbitrator agreed upon between the parties, or, if the parties cannot agree upon an arbitrator, within thirty (30) days, to an arbitrator assigned by the American Arbitration Association located in Atlanta, Georgia. The parties further understand and agree that arbitration shall be conducted under the prevailing rules of the American Arbitration Association and that the award of the arbitrator shall be binding and may be entered as a judgment in any court or tribunal of any

14

competent jurisdiction anywhere in the world. In this regard, if either party invokes this provision of the agreement, the parties expressly agree that time is of the essence and that the matter will be submitted to arbitration within ninety (90) days of notification of the dispute and that the arbitrator may award attorneys fees and costs as part of any award. Furthermore, the parties agree to resolve the matter as expeditiously as possible and will fully cooperate with each other in any respect necessary to enforce this provision.

The parties agree that in the event injunctive relief is sought, that such action will be commenced only and solely in the United States District Court for the Northern District of Georgia, Atlanta Division and the parties voluntarily submit to the jurisdiction and venue of the Court, without reservation.

(19) **Succession**: The rights and obligations created by this agreement shall inure to the benefit of and shall become the responsibility of the heirs, executors and/or administrators and/or assigns of the parties.

15

This 24th day of December, 2000.

<u>Agreed to:</u>

MULTI MEDIA DENTAL SYSTEMS, INC.

*[signature]*

Robert Scott McLaughlin
President
1302 Macy Drive
Roswell, Georgia 30076

Date: December 24, 2000

Sworn to and subscribed
before me this _____ day
of _____, 20____.

_____
Notary Public

<u>Agreed to:</u>

GERRIT MARTENS

*[signature]*

Gerrit Martens
Brugse Heirweg 2
9190 Stekene, Belgium

Date: December 24, 2000

Sworn to and subscribed
before me this _____ day
of _____, 20____.

_____
Notary Public

16