# EXHIBIT F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

SYNCA DIRECT, INC.,

          Plaintiff and Counterclaim-Defendant,

~against~

MULTIMEDIA DENTAL SYSTEMS, INC.,

          Defendant and Counterclaim-Plaintiff,

~against~

SYNCA, and JOHN DOES 1-5,

Additional Counterclaim- Defendants.

**AFFIDAVIT OF RAYMOND MONETTE**

Index No.: 06-CV-1263 LEK/DRH

I, **Raymond Monette**, hereby declare as follows:

1. My name is Raymond Monette and I am President of the Synca Direct Inc., a person over 18 years of age and a resident of Canada.

2. The controversy between Multimedia Dental Systems Inc., (hereinafter "MMD" and Synca Direct Inc., (hereinafter "Synca") is based on the following factual issues which are alleged upon information and belief by your deponent:

    a. MMD entered into an agreement to purchase software known as Mediadent v2, (hereinafter "v2") which is evidenced by the Software Sale Purchase and Exclusive License Agreement attached hereto as Exhibit A dated December 24, 2000 (the "SSP Agreement") between MMD and an individual by the name of Garrett Martens, a resident of Belgium.

b. A copy of the Source Code for v2 was forwarded to an Escrow Agent in the United States as per the conditions of the SSP Agreement.

c. A new entity known as Catapult, to the best of your deponent's knowledge, was owned by Michel Vannoye who is a resident of France, and it was formed for the purpose of developing completely new software known as Mediadent v4 (hereinafter "v4") and DFO Software (hereinafter "DFO") with Mr. Garrett Martens being an employee of Catapult.

d. Mr. Vannoye personally acquired the copyright for v4 and DFO from Catapult on March 20, 2003.

e. At some point during 2003, MMD requested that a copy of the v4 Software be forwarded to a purported Escrow Agent in the United States, such Escrow Agent did not exist and the v4 Software was delivered to MMD.

f. The alleged transfer to escrow and eventually to MMD after March 30, 2003, by Mr. Martens of the v4 Software fails to demonstrate that any authority was granted by Mr. Vannoye at the time it was allegedly transferred to MMD. See letter of Mr. Vannoye attached as Exhibit B with translation attached as Exhibit B-1.

g. Mr. Vannoye transferred his interest in v4 Software on February 25, 2004 to Image Level, an entity owned by Xavier de Tracy.

h. On June 1, 2005, Synca entered into a contractual arrangement with Image Level, a Belgium Corporation, a copy is attached hereto as Exhibit C with regard to the v4 Software in which Image Level represents that it is the Owner of the copyright, trademark and patent rights to the v4 Software, that

           it is non-infringing and this Agreement does not conflict with the rights of any other persons, all of which I relied upon.

    i.    On June 9, 2005, an additional writing by Mr. Vannoye was executed dated September 6, 2005, setting forth that Mr. Vannoye was the owner of the v4 Software and DFO Source Codes, see Exhibit D attached and the translation D-1 attached.

    j.    There is no document or Agreement provided by the Defendant, MMD, establishing that MMD has the right to the v4 Software and/or had any right to assert a copyright in the v4 other than its bland allegations of same.

3.    The allegations in the MMD submissions would lead the Court to believe that v4 has been copied and utilized directly by Synca. The v2 software was developed by Mr. Martens and MMD appears to have some claim to v2, although that claim is questionable due to certain defaults by MMD in making payments to the Owners of the v2 Software.

4.    The development of the v4 Software by Catapult was independent of the v2 Software.

5.    Xavier de Tracy was a programmer working for Catapult prior to his formation of Image Level, so he is personally familiar with this process.

6.    I have reviewed the United States FDA website to determine whether or not MMD has registered its Software as a Medical device and I do not find it so registered; however, my understanding of the FDA rules this device cannot be sold in the United States without such registration.

7. I have attended six trade shows in the last twelve months and generally receive the industry advertising materials and MMD has not been present at any of the trade shows nor is it actively advertising it product for sale. This raises the question as to whether or not MMD is actually being injured by the sale of this Synca v4 product under the current circumstances.

8. MMD does not offer any proof that it has registered with the FDA or that it is actively selling the Product in any market within the United States in its moving papers.

_____
Raymond Monette

Sworn to before me this
15 day of January, 2007

_____
Notary Public

**JULIE BÉLANGER # 113556**
COMMISSAIRE À L'ASSERMENTATION
DISTRICT DE MONTRÉAL

5

STAFFORD, OWENS, CURTIN & TROMBLEY PLLC
ATTORNEYS & COUNSELLORS AT LAW